:ellsworth decision.09/12/07.10

UNITED STATES
BANKRUPTCY COURT
FILED

2007 SEP 14 PM 12: 10

C. L. AUSTIN, CLERK
MILWAUKEE, WISCONSIN

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WISCONSIN

In re:                                          Chapter 7 Proceedings

ALEC T. ELLSWORTH and
LYNETTE M. ELLSWORTH,                           Case No. 05-43940-jes

       Debtors.

---

LAURIE ELLSWORTH,

       Plaintiff,

-v-                                             Adversary No. 06-2150

ALEC T. ELLSWORTH,

       Defendant.

---

# D E C I S I O N

Laurie Ellsworth, plaintiff in this adversary proceeding, seeks a judgment of nondischargeability against her former husband, Alec T. Ellsworth, who is a debtor in this bankruptcy case and defendant in this adversary proceeding.

The grounds asserted in support of the plaintiff's adversary complaint are: 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) (two counts consisting of defalcation by a fiduciary and embezzlement), and 523(a)(6).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

# FACTUAL BACKGROUND

Plaintiff and defendant were married in 1986 and divorced on March 15, 2001 in Waukesha County Circuit Court (Case No. 00-FA-748). Three children (ages 17, 13, and 10) were born of this marriage. Plaintiff is a registered nurse. Defendant received a degree in dentistry in 1994 from Marquette University School of Dentistry. He practiced dentistry for about one year, during which time he also founded Internet Connect Inc. in 1994. Internet Connect Inc. was a technology company engaged in connecting businesses to internet on high speed lines. Defendant was its chief executive officer and owned the majority of its stock.

Internet Connect Inc. quickly flourished. In May of 1999, Time Warner Telecom purchased the stock of Internet Connect Inc. for $7.5 million. Defendant's share in exchange for his stock was $1,437,500. Half of the purchase price was cash and half was Time Warner Telecom stock, which stock was to be distributed over three years in equal installments commencing in the year 2000. At the time the divorce was granted, there were undistributed shares of stock due to the defendant for the years 2001 and 2002. These stock distributions were to be made in or around April of 2001 and April of 2002. Under the terms of the marital settlement agreement ("MSA") between the parties, the remaining stock shares were to be sold first to pay certain designated joint debts (including taxes), with the remaining shares to be split equally between the parties. The MSA contained a provision that the parties would consult and agree as to the timing for the sales of these shares at agreeable prices.

The defendant received the 2001 distribution of 25,841 shares on May 10, 2001.[1] He did not immediately notify the plaintiff when he received this stock distribution. Instead, he placed

---

[1]     Only this distribution which the defendant received on May 10, 2001 is involved in this case.

all of this stock directly into a brokerage account, which he had maintained at Morgan Stanley solely in his name.

Exactly when and how the plaintiff eventually received notice of this stock distribution is not clear. What is clear, however, is that the defendant did not immediately notify the plaintiff of his receipt of this stock until several months after it was received. The plaintiff testified she was first notified around August or September of 2001. The defendant testified he did not recall when he notified the plaintiff. Attorney Richard Reilly, who represented the plaintiff in the divorce proceeding, testified that the plaintiff did not find out about defendant's receipt of this stock until "a number of months after a July, 2001 meeting" which was held by the parties with their respective attorneys to discuss a $350,000 property equalization payment due from the defendant to the plaintiff, as required by the MSA and which was to be paid by June 30, 2001. Attorney Reilly said that the defendant did not reveal his receipt of the stock at the July, 2001 meeting.

The plaintiff testified that beginning in April of 2001 she spoke to the defendant by telephone inquiring whether he received the stock. These discussions were on a weekly basis and continued through August of 2001. She also stated that after May 10, 2001 (the date when the defendant received the stock), he told her he did not have the stock yet, explaining that, because he had been chief executive officer of Internet Connect Inc., it was "complicated."

During the period that the defendant held this stock in his Morgan Stanley margin account, he obtained personal loans with all of the Time Warner Telecom stock received on May 10, 2001 being used as collateral. At no time, however, did any of his loan balances exceed his ½ interest in the Time Warner Telecom stock.

3

On September 25, 2001, the defendant arranged for Morgan Stanley to transfer the plaintiff's ½ interest in the Time Warner Telecom stock to her. At that same time, the defendant also liquidated his ½ stock interest in the Time Warner Telecom stock, which he used first to pay off his outstanding loans to Morgan Stanley. At the time the stock was transferred to the plaintiff on September 25, 2001, its value had substantially declined from its value when the defendant received it on May 10, 2001.

In November and December of 2001, a series of post-divorce hearings were held before Assistant Family Court Commissioner Linda Georgeson. These hearings were in connection with a motion brought by the plaintiff because of the defendant's failure to pay the $350,000 property equalization payment due on June 30, 2001 and in connection with defendant's past due family support. Commissioner Georgeson addressed the loss in value of plaintiff's ½ interest in the Time Warner Telecom stock and stated that the loss shall be computed on the difference between the value of plaintiff's stock interest (12,921 shares) as of May 24, 2001 (14 days after the defendant had received the stock from Time Warner Telecom) and the value of her stock interest on September 10, 2001 (which was the date Commissioner Georgeson concluded was when the stock was distributed to the plaintiff).[2]

A *de novo* review was requested by both parties. On May 23, 2002, at a hearing before The Honorable Lee S. Dreyfus Jr., Waukesha County Circuit Judge, Commissioner Georgeson's finding of contempt was upheld. At a subsequent hearing on September 11, 2002, Judge Dreyfus also adopted Commissioner Georgeson's method of computing the loss of value in

---

[2] Although Commissioner Georgeson concluded that the Time Warner Telecom stock was distributed to the plaintiff on September 10, 2001, the actual date of such transfer was September 25, 2001 as noted by Judge Dreyfus in his subsequent ruling.

4

plaintiff's interest in the Time Warner stock, with a slight adjustment by finding that the actual date that the plaintiff received the stock was September 25, 2001, not September 10, 2001 as found by Commissioner Georgeson. The resulting damages based upon Judge Dreyfus' calculations totaled $442,010. Judge Dreyfus imposed contempt sanctions against the defendant and ordered him to serve 180 days in the Waukesha County Jail with the right to purge this contempt order by paying the $442,010 damages plus 6.5% interest to the plaintiff on or before June 11, 2003.

The defendant failed to pay the damages by the June 11, 2003 deadline and was then confined in the Waukesha County Jail until he was released by an order of The Honorable J. Mac Davis, Waukesha County Circuit Judge, on August 27, 2004. Judge Davis modified the prior terms of the purge order by requiring the defendant to make $125 weekly payments through the remainder of his 180-day sentence.

Judge Dreyfus' decision was then appealed to the Wisconsin Court of Appeals and was affirmed.

The defendant filed his voluntary petition in bankruptcy on October 16, 2005.

## LAW

### Section 523(a)(2)(A)

Under § 523(a)(2)(A), debts are excepted from discharge based upon either false representation or actual fraud. McClellan v. Cantrell, 217 F.3d 890, 893-94 (7th Cir. 2000).

False representation requires establishing the following facts:

1.  debtor made a representation;

2.  at the time of the representation, debtor knew such representation was false;

5

3.   debtor made representation with the intent and purpose of deceiving the plaintiff;

4.   plaintiff justifiably relied upon such representation; and

5.   plaintiff sustained a loss or damages as a proximate consequence of the representation having been made.

Collier on Bankruptcy, ¶ 523.08[1][e] (rev. 15th ed. 2007).

This court previously denied plaintiff's motion for summary judgment but found, based on issue preclusion (also known as collateral estoppel) – that, with the exception of justifiable reliance, all of the other elements needed for false representation were established.

A court must look to the law of the appropriate state – meaning, in this case, Wisconsin – to determine if issue preclusion applies. In re Wagner, 79 B.R. 1016, 1019-20 (Bankr. W.D. Wis. 1997), sets forth the following four basic requirements in Wisconsin for issue preclusion:

1.   the prior judgment must be valid and final on its merits,

2.   there must be identity of issues,

3.   there must be identity or privity of parties, and

4.   the issues in the prior action asked to be invoked must have been actually litigated and necessarily determined.

This court is satisfied that issue preclusion applies to the findings which were made in the state court contempt proceedings against the defendant. This leaves justifiable reliance as the remaining element to be addressed by this court on whether defendant is liable for false representation under § 523(a)(2)(A).

6

Justifiable reliance is the standard required under § 523(a)(2)(A), as proclaimed by

Field v. Mans, 516 U.S. 59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (quoting Restatement

(Second) of Torts § 545A (comment b) (1976)), which states.

> Justifiable reliance does not require a party to conform to the standard
> of the reasonable man. It is a matter of qualities and characteristics
> of a particular plaintiff and the circumstances of the particular case
> rather than the application of the community standard of conduct to
> all cases.

The justifiable reliance standard imposes no duty to investigate unless the falsity of the

representation is readily apparent. Id. at 70-72. See also In re Basel-Johnson, 366 B.R. 831, 845

(Bankr. N.D. Ill. 2007).

Justifiable reliance was proven in this trial by the plaintiff's convincing testimony.

She stated that she made repeated attempts after May 10, 2001 to find out from the defendant if he

had received the Time Warner Telecom stock. The defendant denied such receipt, with the

explanation that it was "complicated." His response that it was "complicated" was evasive. The

plaintiff testified that she believed him when he falsely told her he had not received the stock by

declaring, on cross examination:

> I took you at your word. There was a past history that we were
> married and there was reliability during the marriage. (Tr. 74)

Both the plaintiff and her attorney (or someone on his staff) were rebuffed by Time

Warner Telecom officials in their attempts to find out the status of this stock.

While a party does not meet the justifiable reliance standard if that party acts blindly

and fails to recognize an apparent situation, that is not the situation here.

7

Even if justifiable reliance was lacking in this case, the defendant's actions rose to the level of actual fraud. Actual fraud is a ground separate from false representation under § 523(a)(2)(A) and does not require a finding of any reliance. McClellan v. Cantrell, 217 F.3d at 894 (7th Cir. 2000); In re Basel-Johnson, 366 B.R. at 846 (Bankr. N.D. Ill. 2007). Reliance only is relevant with respect to a misrepresentation. In Village of San Jose v. McWilliams, 284 F.3d 785, 791 (7th Cir. 2002), the Seventh Circuit set forth a series of factors, any one of which, if proven, creates a presumption of actual intent to defraud. The Seventh Circuit declared that, if any of these factors is met, the burden of proof then shifts to the debtor to demonstrate that he lacked actual fraud. Among these factors is "the retention of possession, benefit or use of the property in question." In the case at bar, the record amply showed that the defendant, after receipt of the Time Warner Telecom stock, lied to plaintiff about whether he received it and committed actual fraud. He engaged in a scheme to deprive the plaintiff of her interest in the Time Warner Telecom stock so that it could be used for his sole purpose and benefit. The fact that he may have intended to deprive the plaintiff of her interest temporarily is no defense. In re Scheller, 265 B.R. 39, 54 (Bankr. S.D. N.Y. 2001); In re Bevilacqua, 53 B.R. 331, 334 (Bankr. S.D. N.Y. 1985). The defendant explained that he thought there was a "restrictive legend"[3] on the Time Warner Telecom stock, which precluded his ability to transfer this stock. That is no excuse for not informing the plaintiff upon his receipt of this stock.

The court finds that the defendant has failed to overcome the presumption of actual fraud.

---

[3] On March 16, 2007, the defendant filed an affidavit stating he was in error and that there was no restrictive legend on the Time Warner Telecom stock certificate which he received on May 10, 2001.

The facts of this case persuade this court that the defendant by his actions made false representations to the plaintiff and also engaged in actual fraud. Each of these are grounds for exception to discharge under § 523(a)(2)(A).

### Section 523(a)(4) - Defalcation While Acting in Fiduciary Capacity

The plaintiff asserts that the MSA, by requiring the defendant to hold the Time Warner Telecom stock which he received on May 10, 2001, created a trust within the meaning of § 523(a)(4). The defendant disputes this assertion and contends that no trust was created under the MSA, citing as authority In re Teichman, 774 F.2d 1395 (9th Cir. 1985). Teichman holds that, as a general rule, § 523(a)(4) does not apply to any debt in connection with a property settlement agreement. Id. at 1400.

The law in the Seventh Circuit has adopted a broader view of a fiduciary relationship under § 523(a)(4) under certain circumstances. In re Marchiando, 13 F.3d 1111 (7th Cir. 1994), declares that a fiduciary relationship exists under § 523(a)(4) where "a difference in knowledge or power between a fiduciary and principal ... gives the former a position of ascendency over the latter." Marchiando, Id. at 1116. That occurs when "one party to the relation is incapable of monitoring the other party's performance of his undertaking." Marchiando, Id. at 1116. That is precisely the situation here where the Time Warner Telecom stock distributed in 2001 was distributed in the defendant's sole name and delivered to him. The plaintiff had no control and was unable to monitor the defendant's performance.

A fiduciary's obligation must exist prior to the occurrence of the alleged wrong. Marchiando, id. 1116. Both Judge Dreyfus and the Wisconsin Court of Appeals concluded that, when the MSA was entered into, the defendant was obligated to promptly notify the plaintiff when

9

he received the stock. He failed to do so. The fact that the MSA did not label this arrangement a trust is immaterial. Even though the MSA did not specifically describe the Time Warner Telecom stock as trust property, it is clear that a trust was created. In re Donlevy, 342 B.R. 774, 781 (Bankr. N.D. Ill. 2006), declares that it is immaterial whether or not the intended relationship is called a trust or described the property as trust property where a particular party is entrusted with funds to be used only for a specific purpose.

The defendant is an educated businessman. He knew that he had a clear fiduciary duty to the plaintiff to inform her when he received the stock. By not promptly notifying the plaintiff, he failed to carry out his fiduciary duty. This became a nondischargeable debt under § 523(a)(4) as a defalcation by a fiduciary.

### Section 523(a)(4) - Embezzlement

A nondischargeable debt under § 523(a)(4) also was proven by a showing that the defendant committed embezzlement. Embezzlement does not require that the defendant was acting in a fiduciary capacity. In re Hathaway, 364 B.R. 220, 239 (Bankr. E.D. Va. 2007); In re Romano, 353 B.R. 738 (Bankr. D. Mass. 2006).

Embezzlement, for purposes of § 523(a)(4), is the fraudulent appropriation of property by a person to whom such property was entrusted and in whose hands it has lawfully come. In re Weber, 892 F.3d 534, 538 (7th Cir. 1989); In re Mathis, 360 B.R. 662, 668 (Bankr. C.D. Ill. 2006). Embezzlement requires fraud in fact and involves moral turpitude or intentional wrong, rather than implied or constructive fraud. In re Gumieny, 8 B.R. 602 (Bankr. E.D. Wis. 1981).

All of these requirements for embezzlement were proven in this case. The plaintiff's interest in the Time Warner Telecom stock was entrusted to the defendant for a specific purpose.

The defendant misappropriated this property when, without authority, he placed it into his own margin account and used it for his own personal purposes. He then repeatedly lied to the plaintiff by telling her after May 10, 2001 that he had not as yet received this stock.

His actions established embezzlement within the meaning of § 523(a)(4).

### Section 523(a)(6)

To prevail under this count, a creditor must prove by a preponderance of the evidence that the debtor's conduct was both willful and malicious. Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)

Kawaauhau v. Geiger, 523 US 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1988), states that "willful" for purposes of § 523(a)(6) means actual intent to cause injury, not merely the commission of an intentional act that leads to injury. As noted in In re Basel-Johnson, 366 B.R.831, 849 (Bankr. N.D. Ill. 2007), recent decisions have found that either a showing of subjective intent to injure the creditor or a showing of debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required under Geiger (citing case authorities). "Malicious" for purposes of § 523(a)(6) means "in conscious disregard of one's duties or without just cause or excuse. In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). Whether an actor behaved willfully or maliciously is ultimately a question of fact reserved for the trier of the fact. Thirtyacre, 36 F.3d at 700.

In this case, the court finds that the defendant's actions were not taken with the intent to inflict a deliberate and malicious injury upon the plaintiff. His actions were taken for the purpose of enabling him to meet his personal expenses. The court is not persuaded that the evidence supports a finding of nondischargeability under § 523(a)(6).

11

## DAMAGES

At the start of this trial, the court informed the parties that, if it found that this obligation is a nondischargeable debt, the resulting loss in value of plaintiff's Time Warner Telecom stock would be $442,010, as established in the state court contempt proceedings. However, the court also stated that both parties would retain their rights to return to Waukesha County Circuit Court (Case No. 00-FA-748) and request adjustments resulting from any credits against this amount which the defendant may be entitled to receive as well as any claimed additional charges to this amount (for accrued interest or other charges) to which the plaintiff may be entitled.

At the conclusion of the trial, the plaintiff waived any claim for attorney's fees against the defendant.

## CONCLUSION

The debt by the defendant to the plaintiff in the sum of $442,010, subject to any adjustments, if any, made by the Waukesha County Circuit Court (Case No. 00-FA-748), is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

The foregoing constitutes this court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

A separate order for judgment shall be entered.

Dated at Milwaukee, Wisconsin, this ___14___ day of September, 2007.

BY THE COURT:


JAMES E. SHAPIRO
U.S. BANKRUPTCY JUDGE

12

c:
Patrick B. Howell, Esq.
555 East Wells Street, Ste. 1900
Milwaukee, WI 53202

Alec T. Ellsworth
S360 Genesee Street
Delafield, WI 53018

13